**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DAVID FREIFELD, | ) |
| on behalf of Plaintiff and the class | ) |
| described herein, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
|   v. | ) |
| | ) |
| SONDER HOLDINGS INC., | ) |
| PERSONA IDENTITIES INC., | ) |
| and DOES 1-10, | ) |
| | ) |
|       Defendants | ) |

## COMPLAINT – CLASS ACTION

1.      Plaintiff David Freifeld brings this action against Defendants Sonder Holdings Inc.

("Sonder"), and Persona Identities Inc. ("Persona") to secure redress for Defendant's unlawful

collection, use, storage, and disclosure of Plaintiff's sensitive biometric data.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. §1332(d),

in that:

      a.      There are more than 100 class members.

      b.      The amount in controversy, exclusive of interest and costs, is over $5 million

            on a classwide basis.

      c.      Plaintiff and many class members are citizens of Illinois; each Defendant is a

            Delaware corporation with its principal place of business in California.

3.      Personal jurisdiction and venue are proper because the events at issue occurred in

Illinois.

## PARTIES

4.      Plaintiff David Freifeld is a citizen of Illinois who resides in Vernon Hills, Illinois.

5.      Defendant Sonder is a Delaware corporation with its principal office at 101 15th

Street, San Francisco, California 94103.

6.     Sonder manages short-term rentals, such as apartment hotels, in North America, Europe, and Dubai. Sonder manages over 9,000 units in over 40 cities. It has at least eight properties in Chicago:

        a.      Market Hall, 1436 W. Randolph St., Chicago, IL 60607, with 49 rooms;

        b.      Found Chicago, 613 N. Wells St., Chicago, IL 60654, with 98 rooms;

        c.      South Wabash, 1419 South Wabash Avenue, Chicago, Illinois, with 61 rooms;

        d.      The Plymouth, 417 South Dearborn Street, Chicago, Illinois, with 30 rooms;

        e.      Jewelers Row, 19 South Wabash Avenue, Chicago, Illinois, with 38 rooms;

        f.      The Opal, 61 West Erie Street, Chicago, Illinois, with 28 rooms;

        g.      The Burnham, 555 West Jackson Boulevard, Chicago, with 51 rooms;

        h.      Greektown, 314 South Halsted Street, Chicago, with 9 rooms.

7.     One of the rentals managed by Sonder is The Hillsboro in Hillsboro Beach, Florida.

8.     Defendant Persona is a Delaware corporation with its principal office at 353 Sacramento Street, San Francisco, CA 94111.

9.     Persona furnishes biometric identification and information storage services to Sonder, by contract.

10.     Does 1-10 are other persons and entities involved in the conduct complained of. Plaintiff does not know who they are.

## FACTS

11.     In late May 2024, Plaintiff signed up for a rental unit at The Hillsboro via Expedia, for the period June 3, 2024 through June 7, 2024. He did not use the Sonder website or visit it.

12.     After booking, Plaintiff was asked to provide an image of a driver's license. Sonder's contractor Persona captured and stored the face geometry from the photo on the license, comparing it to Plaintiff when he checked in.

13.     No disclosure were provided to Plaintiff about what was done with the biometric information or how or where it was stored or how long it would be retained.

14.     Plaintiff did not consent to the use of his biometric information.

15.     Biometrics are not relegated to esoteric corners of commerce.  Many businesses – such as Defendants' – now use biometric applications.

16.     Biometric identifiers such as facial scans are permanent.

17.     This exposes persons such as Plaintiff to serious and irreversible privacy risks.

18.     For example, if a database containing biometric data is hacked, breached, or otherwise exposed, the subjects have no means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.

19.     A black market already exists for biometric data.  Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data – including fingerprints, iris scans, and a facial photograph – of over a billion Indian citizens. See Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity Theft*, The Washington Post (Jan. 4, 2018).

20.     Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1 et seq. ("BIPA"), to regulate companies that collect and store biometric data in Illinois.

21.     Notwithstanding the clear and unequivocal requirements of the law, Sonder and Persona disregarded the statutorily protected privacy rights of customers in Sonder-managed properties and unlawfully collected, stored, and used their biometric data in violation of BIPA.

22.     Specifically, Sonder and Persona violated BIPA because they did not:

  a.     Properly inform Plaintiff in writing of the specific purpose and length of time for which biometric data was being collected, stored, disseminated, and used, as required by BIPA;

  b.     Receive a written release from Plaintiff to collect, store, disseminate or

otherwise use all types of biometric data, as required by BIPA; and

c.     Obtain consent from Plaintiff to disclose, redisclose, or otherwise

disseminate all types of biometric data to a third party as required by BIPA.

## BIOMETRIC INFORMATION PRIVACY ACT

23.     In the early 2000s, major national corporations started using Chicago and other locations in Illinois to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(c).

24.     In late 2007, a biometric company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy.  As a result, there was a serious risk that millions of fingerprint records – which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data  –  could now be sold through the bankruptcy proceedings without adequate protections for Illinois citizens.

25.     The bankruptcy also highlighted the fact that most consumers who used the company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

26.     Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. See *Illinois House Transcript*, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

27.     To ensure compliance, BIPA provides that the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS 14/20.

28.     BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, collect, capture, purchase, receive through trade, or

-4-

otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

    a.    Informs the subject in writing that a biometric identifier or biometric information is being collected, stored and used;

    b.    Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

    c.    Receives a written release executed by the subject of the biometric identifier or biometric information.

740 ILCS 14/l5(b).

29.    Biometric identifiers include retina and iris scans, voiceprints, fingerprints, and scans of hand and face geometry. 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. Id.

30.    BIPA also establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information. See, e.g., 740 ILCS 14/I5(c)-(d). For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for such disclosure. 740 ILCS 14/l5(d)(l).

31.    BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS 4/l5(c)) and requires companies to develop and comply with a written policy – made available to the public – establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/l5(a).

32.    The Illinois legislature enacted BIPA due to the increasing use of biometric data

in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology. Biometrics are biologically unique to the individual and, once compromised, an individual is at heightened risk for identity theft and left without any recourse.

33.    BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics as well as protecting their rights to know the precise nature for which their biometrics are used and how they are being stored and ultimately destroyed.

34.    Unlike other statutes that only create a right of action if there is a data breach, BIPA strictly regulates the manner in which entities may collect, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

35.    As set forth above, Defendants Sonder and Persona disregarded Plaintiff's legal rights in violation of BIPA.

36.    Plaintiff was  exposed to the risks and harmful conditions created by Defendants' violations of BIPA alleged herein.

37.    Plaintiff is entitled to bring suit to redress the violation of his rights under BIPA. *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, 129 N.E.3d 1197.

## COUNT I

38.    Plaintiff incorporates paragraphs 1-37.

39.    Defendants Sonder and Persona violated 740 ILCS 14/15(b) by failing to obtain informed written consent and releases before obtaining  biometric identifiers and information from Plaintiff and the class members.

## CLASS ALLEGATIONS

40.     Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

41.    The class consists of (a) all individuals (b) who either (i) have Illinois addresses or (ii) rented accommodations at a Sonder location in Illinois (both according to Defendants' records) (c)

-6-

whose biometric information was captured or used by Persona as contractor for Sonder (d) on or after a date five years prior to the filing of this action.

42.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

43.     On information and belief, based on the volume of Sonder's business, there are more than 100 class members, and the class is so numerous that joinder of all members is not practicable.

44.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members.  The predominant common questions are:

        a.     Whether Sonder and its contractor Persona capture biometric information without disclosure and consent;

        b.     Whether such conduct violates BIPA.

45.     Plaintiff will fairly and adequately represent the class members.  Plaintiff has retained counsel experienced in class actions and consumer litigation.

46.     Plaintiff's claim is typical of the claims of the class members.  All are based on the same factual and legal theories.

47.     A class action is appropriate  for the fair and efficient adjudication of this matter, in that:

        a.     Individual actions are not economically feasible.

        b.     Members of the class are likely to be unaware of their rights;

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

        i.     Statutory damages of $5,000 per person for each willful and/or reckless violation of BIPA (740 ILCS 14/20(2)) or statutory damages of $1,000 per person for each negligent violation of BIPA (740 ILCS

-7-

14/20(1));

ii.      Reasonable attorneys' fees and costs and other litigation expenses

pursuant to 740 ILCS 14/20(3);

iii.      Such other or further relief as is appropriate.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Dulijaza (Julie) Clark
Lucas M. Coughlin
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1800
Chicago, IL 60603-1841
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

## **JURY DEMAND**

Plaintiff demands trial by jury.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any  recovery herein for 1/3 or such amount as a court awards.   All rights relating to attorney's fees have been assigned to counsel.


*/s/ Daniel A. Edelman*
Daniel A. Edelman


Daniel A. Edelman
**EDELMAN, COMBS, LATTURNER
     & GOODWIN, LLC**
20 S. Clark Street, Suite 1800
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)