**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID FREIFELD, on behalf of Plaintiff and the class described herein, | ) | No. 1:24-cv-05459 |
| Plaintiff, | ) | Hon. Jorge L. Alonso |
| v. | ) | |
| PERSONA IDENTITIES INC., | ) | |
| Defendant. | ) | |

## SECOND AMENDED CLASS ACTION COMPLAINT

1. Plaintiff David Freifeld brings this action against Defendant Persona Identities Inc. ("Defendant" or "Persona") to secure redress for Defendant's unlawful collection, capture, disclosure and/or dissemination of Plaintiff's sensitive biometric data.

## JURISDICTION AND VENUE

2. This Court has jurisdiction under the Class Action Fairness Act, 28 U.S.C. §1332(d), in that:

   a. There are more than 100 class members.

   b. The amount in controversy, exclusive of interest and costs, is over $5 million on a class wide basis.

   c. Plaintiff and many class members are citizens of Illinois; Defendant is a Delaware corporation with its principal place of business in California.

3. Personal jurisdiction and venue are proper because the events at issue occurred in Illinois.

## PARTIES

4. Plaintiff David Freifeld is a citizen of Illinois who resides in Vernon Hills, Illinois.

5. Defendant Persona is a Delaware corporation with its principal office at 353 Sacramento Street, San Francisco, CA 94111.

6. Persona furnishes biometric identification and information storage services by contract.

## THE BIOMETRIC INFORMATION PRIVACY ACT

7. In the early 2000s, major national corporations started using Chicago and other locations in Illinois to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(c).

8. In late 2007, a biometric company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. As a result, there was a serious risk that millions of fingerprint records – which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data – could now be sold through the bankruptcy proceedings without adequate protections for Illinois citizens.

9. The bankruptcy also highlighted the fact that most consumers who used the company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown

third parties.

10. Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See Illinois House Transcript*, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

11. To ensure compliance, BIPA provides that the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS 14/20.

12. Biometric identifiers include retina and iris scans, voiceprints, fingerprints, and scans of hand and face geometry. 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id*.

13. Section 15(b) of BIPA requires a private entity that collects or otherwise obtains an individual's biometric data to first obtain the individual's informed, written consent. 740 ILCS 14/15(b).

14. The Seventh Circuit has described the informed-consent regime as the "heart of BIPA." *Bryant v. Compass Grp, USA, Inc. 958 F.3d at 626*. Section 15(b) ensures that "consumers understand, before providing their biometric data, how that information will be used, who will have access to it, and for how long it will be retained." *Id.*

15. BIPA also establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information. *See e.g.*, 740 ILCS 14/I5(c)-(d). For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for such disclosure. 740 ILCS 14/l5(d).

16. The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and – most significantly – the unknown ramifications of biometric technology. Biometrics are biologically unique to the individual and, once compromised, an individual is at heightened risk for identity theft and left without any recourse.

17. BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics as well as protecting their rights to know the precise nature for which their biometrics are used, how they are being stored, where they are being transmitted, and ultimately when they will be destroyed.

18. As set forth below, Defendant Persona disregarded Plaintiff's legal rights in violation of BIPA.

19. Plaintiff was exposed to the risks and harmful conditions created by Defendant's violations of BIPA alleged herein.

20. Plaintiff is entitled to bring suit to redress the violation of his rights under BIPA. *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, 129 N.E.3d 1197.

**FACTS**

21. In late May 2024, Plaintiff signed up for a rental unit at The Hillsboro via Expedia, for the period June 3, 2024, through June 7, 2024.

22. After booking, Plaintiff was asked to provide Persona with an image of his driver's license, who captured, collected and stored his facial geometry from the photo on the license, then compared it to his facial biometrics when he checked in to his rental unit.

23. On information and belief, Defendant then transmitted, disclosed, or otherwise

disseminated Plaintiff's biometrics to at least one of its third party subprocessors.

24. Importantly, prior to the collection, capture, storage and use of Plaintiff's biometric information or biometric identifiers (collectively "biometrics"), Defendant failed to obtain Plaintiff's informed, written consent outlining the complete purposes for which his biometrics were being collected, captured, stored, and/or used.

25. Further, no Biometric Information Privacy Act ("BIPA") compliant disclosures were provided to Plaintiff about what was done with his biometrics, where it was stored, or specifically to whom such biometrics would be disseminated to.

26. To that end, while Defendant's Privacy Policy discloses that it *may* engage third-party entities to process data, such as biometrics, it merely provides a list of each and every *potential* third-party subprocessor that may receive *any type* of data, while not providing any specific information about where, or to whom, biometrics are being transmitted.

27. Such a broad disclosure did not provide Plaintiff with any meaningful insight about who would, or did, receive his biometrics, and therefore, deprived him of the opportunity to informedly consent to the disclosure of his biometrics to third-parties.

28. Accordingly, Defendant has violated Section 15(b) and 15(d) of BIPA.

## CLASS ALLEGATIONS

29. Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3). Plaintiff seeks to represent a Class defined as follows:

> Class: All Illinois residents whose biometric identifiers or biometric information were collected, captured, stored, used, disclosed or otherwise disseminated by Defendant within the state of Illinois any time within the applicable limitations period.

30. Excluded from the Class are any members of the judiciary assigned to preside over this matter; any officer or director of Defendant; and any immediate family member of such officers or directors.

31. Upon information and belief, there are at least one hundred members of the Class, making the members of the Class so numerous that joinder of all members is impracticable. Although the exact number of members of the Class is currently unknown to Plaintiff, the members can be easily identified through Defendant's personnel records.

32. Plaintiff's claims are typical of the claims of the members of the Class Plaintiff seeks to represent, because the factual and legal bases of Defendant's liability to Plaintiff and the other members are the same, and because Defendant's conduct has resulted in similar injuries to Plaintiff and to the Class. As alleged herein, Plaintiff and the Class have all suffered damages as a result of Defendant's BIPA violations.

33. There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members. Common questions for the Class include, but are not limited to, the following:

a. Whether Defendant captures or collects biometric information or biometric identifiers without informed, written consent;

b. Whether Persona disseminated the biometric information or biometric identifiers of Defendant's clients' customers without informed, written consent;

c. Whether such conduct violates BIPA.

34. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class

treatment of common questions of law and fact is superior to multiple individual actions in that it conserves the resources of the courts and the litigants and promotes consistency of adjudication.

35. Plaintiff will adequately represent and protect the interests of the members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so. Neither Plaintiff nor Plaintiff's counsel have any interest adverse to those of the other members of the Class.

36. Defendant has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

## COUNT I

37. Plaintiff incorporates paragraphs 1-28.

38. Defendant Persona violated 740 ILCS 14/15(b) because prior to the collection, capture or storage of Plaintiff's biometrics, Defendant failed to obtain informed, written consent regarding the extent of the purposes for which his biometrics were being collected, captured, stored, and/or used.

## COUNT II

39. Plaintiff incorporates paragraphs 1-28.

40. Defendant Persona violated 740 ILCS 14/15(d) because despite disclosing or

otherwise disseminating Plaintiff's biometrics, Defendant did not obtain Plaintiff's informed, written consent regarding dissemination to, or proper identification of, any third parties who were to receive his biometrics including Persona's third party vendors or data processors.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, respectfully requests that this Court enter an Order:

a. Certifying the Class as defined above, appointing Plaintiff as class representative and the undersigned as class counsel;

b. Declaring that Defendant's actions, as set forth herein, violate BIPA;

c. Awarding injunctive and equitable relief as necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA;

d. Awarding statutory damages of $5,000 for each willful and/or reckless violation of BIPA, pursuant to 740 ILCS 14/20(2);

e. Awarding statutory damages of $1,000 for each negligent violation of BIPA, pursuant to 740 ILCS 14/20(1);

f. Awarding reasonable attorneys' fees, costs, and other litigation expenses pursuant to 740 ILCS 14/20(3);

g. Awarding pre- and post-judgment interest, as allowable by law; and

h. Awarding such further and other relief as the Court deems just and equitable

*<u>/s/ Daniel A. Edelman</u>*
Daniel A. Edelman

Daniel A. Edelman
Dulijaza (Julie) Clark
Alexandra R. Huzyk

**EDELMAN, COMBS, LATTURNER
& GOODWIN, LLC**
20 South Clark Street, Suite 1800
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

**JURY DEMAND**

Plaintiff demands trial by jury.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

**NOTICE OF LIEN AND ASSIGNMENT**

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 S. Clark Street, Suite 1800
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

**CERTIFICATE OF SERVICE**

I, Daniel A. Edelman, hereby certify that on Tuesday, February 11th, 2025, I caused a true and accurate copy of the foregoing document to be filed via the Court's CM/ECF online system, which shall cause notification to be sent by email to the following:

Mariah A. Young - mayoung@cooley.com
Travis LeBlanc – tleblanc@cooley.com
Bethany Lobo – blobo@cooley.com
Max Bernstein – mbernstein@cooley.com
Joel Griswold - jgriswold@bakerlaw.com
Bonnie Keane DelGobbo – bdelgobbo@bakerlaw.com
Katharine H. Walton – kwalton@bakerlaw.com

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Dulijaza (Julie) Clark
Alexandra Huzyk
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1800
Chicago, IL 60603-1841
(312) 739-4200 / (312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com